Gloria A. WATKINS, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent.

Supreme Court

*No. 82–2084. Argued January 30, 1984.—Decided March 27, 1984.*

(Also reported in 345 N.W.2d 482.)

754

For the petitioner-appellant there were briefs by *Jeff Scott Olson* and *Julian & Olson, S.C.*, Madison, and oral argument by *Jeff Scott Olson.*

For the respondent the cause was argued by *David C. Rice*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

Amicus curiae brief was filed by *Nola J. Hitchcock Cross* and *Podell, Ugent & Cross, S.C.*, Milwaukee, for the Milwaukee District Council 48, American Federation of State, County & Municipal Employees, AFL–CIO.

WILLIAM A. BABLITCH, J. Does the Wisconsin Fair Employment Act authorize the Department of Industry, Labor and Human Relations (DILHR) to award reasonable attorney's fees to the prevailing complainant in a discrimination action even though that Act contains no express statutory language authorizing such an award? This is the question raised by Gloria Watkins, the prevailing party in a racial discrimination action that she brought against her employer under this Act. She contends that the authority is implicit in the language of the Act and is necessary to carry out the legislative intent. Because the Act is designed both to discourage discriminatory practices in the work place and to make whole anyone discriminated against, and because the legislature specifically mandated in the Act that the Act shall be liberally construed, we hold that DILHR has the authority to award reasonable attorney's fees to a prevailing complainant. We reverse and remand the case to DILHR for proceedings consistent with this opinion.

In 1971, Gloria Watkins was employed as a case worker for the Milwaukee county department of public welfare. On May 25, 1971, Watkins filed a charge of unlawful racial discrimination against her employer under the

Wisconsin Fair Employment Act[1] with the Equal Rights Division of DILHR. In her complaint, Watkins alleged that on several occasions she had been discriminatorily denied the opportunity to transfer into a service zone position. Although such a transfer did not involve any pay increase, Watkins had requested the transfer because she believed that the work involved in a service zone position was more desirable.

Nearly ten years later, after a lengthy and protracted process, including hearings by DILHR, reviews by the Labor and Industry Review Commission (LIRC) and the circuit court, an appeal to this court (*Watkins v. ILHR Department*, 69 Wis. 2d 782, 233 N.W.2d 360 (1975)), and further proceedings with DILHR, DILHR determined that the county had on several occasions discriminated against Watkins on the basis of her race in violation of the Fair Employment Act. Because there was no pay differential between Watkins' previous position and a service zone position, she received no monetary award. What Watkins essentially received was a decision confirming that she had been a victim of unlawful racial discrimination, and an order to her employer not to do it again. Watkins also received a bill from her attorney in the amount of $2,658.36. LIRC issued a decision and order denying her request for reimbursement of her reasonable attorney's fees because it concluded that DILHR was not authorized under the Act to award such fees to a prevailing complainant.

Watkins petitioned the circuit court for review of LIRC's decision and order. The court affirmed the decision and order issued by LIRC. Watkins subsequently appealed to the court of appeals. Watkins and LIRC then filed with this court a joint petition to bypass the court of appeals, which we granted.

[1] The Wisconsin Fair Employment Act is currently codified in secs. 111.31–111.395, Stats. 1981–82.

Watkins contends that an award of reasonable attorney's fees to a complainant who prevails in an action brought pursuant to the Wisconsin Fair Employment Act is implicitly authorized under the Act. She points to the language of the statute, which directs that the provisions of the Act be liberally construed to accomplish its purposes. She argues that although the provisions of the Act do not expressly state that DILHR has the authority to award attorney's fees to a prevailing complainant, such authority should be inferred from the broad remedial language of former sec. 111.36(3)(b), Stats. 1975. That provision, set out in full below,[2] directs the De-

[2] Section 111.36(3)(b), Stats. 1975, provided in relevant part:

"(b) If, after hearing, the department finds that the respondent has engaged in discrimination, it shall make written findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay. Back pay liability shall not accrue from a date more than 2 years prior to the filing of a complaint with the department. . . ."

Section 111.36(3)(b), Stats. 1975, was in effect at the time Watkins filed her amended complaint in which she requested an award of reasonable attorney's fees. This provision was subsequently amended by ch. 319, Laws of 1979, which made only a minor revision. Section 111.36(3)(b) was then renumbered sec. 111.36(3)(c), and amended by ch. 221, sec. 570, Laws of 1979 to provide in pertinent part:

"(c) If, after hearing, the examiner finds that the respondent has engaged in discrimination or unfair honesty testing, the examiner shall make written findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay. Back pay liability may not accrue from a date more than 2 years prior to the filing of a complaint with the department. . . ."

Section 111.36(3)(c), Stats., was subsequently renumbered sec. 111.39(4)(c) and amended by ch. 334, Laws of 1981, to provide in pertinent part:

"111.39(4)(c) If, after hearing, the examiner finds that the respondent has engaged in discrimination or unfair honesty testing, the examiner shall make written findings and order such action by the respondent as will effectuate the purpose of this

partment to "make written findings and order such action . . . as will effectuate the purpose of this sub-chapter. . . ." Although sec. 111.36(3)(b) was subsequently amended, this language was not changed.

In the United States, a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 241, 247 (1975). This is the "American rule". We have previously cited this rule as the applicable rule in Wisconsin. *See, e.g., Cedarburg L. & W. Comm. v. Glens Falls Ins. Co.*, 42 Wis. 2d 120, 124–25, 166 N.W.2d 165 (1969). However, in *Cedarburg,* we recognized that there are various exceptions to and modifications of this rule. *Id.* We also noted that the American rule does not apply when there are contractual or statutory provisions authorizing the recovery of attorney's fees by a prevailing litigant. *See* 42 Wis. 2d at 124.

In determining whether there was statutory authorization for an award of reasonable attorney's fees, federal courts have construed provisions containing broad remedial language to allow recovery of attorney's fees despite the absence of express statutory language allowing such an award. In *Smith v. Califano*, 446 F. Supp. 530 (D. D.C. 1978), the court held that Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., conferred authority upon a federal administrative agency to allow an award of attorney's fees to successful plaintiffs. Although the court acknowledged that Title VII does not expressly provide that the agency may award at-

subchapter, with or without back pay. If the examiner awards any payment to an employe because of a violation of s. 111.321 by an individual employed by the employer, under s. 111.32(6), the employer of that individual is liable for the payment. Back pay liability may not accrue from a date more than 2 years prior to the filing of a complaint with the department. . . ."

torney's fees, it nevertheless concluded that such power was authorized under sec. 717(b), 42 U.S.C. sec. 2000e–16(b), which requires the agency to "enforce the provisions [prohibiting employment discrimination] through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section. . . ." Similarly, in *Krodel v. Young*, 576 F. Supp. 390, 33 Empl. Prac. Dec. (CCH) ¶ 34,061 (D.D.C. 1983), the court held that an award of attorney's fees to a plaintiff who prevailed in an action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq., was authorized under sec. 633a(c) of the Act, which allows an aggrieved person to bring a civil action ". . . in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."

LIRC argues that the language of sec. 111.36(3)(b), Stats., lacks sufficient specificity to authorize an award of attorney's fees to a prevailing complainant. We have recognized that the provisions of the Fair Employment Act do not expressly refer to an award of attorney's fees. *Yanta v. Montgomery Ward & Co., Inc.*, 66 Wis. 2d 53, 62–63, 224 N.W. 2d 389 (1974). LIRC cites *Yanta* as authority for the proposition that the provisions of the Act do not confer upon DILHR the power to award reasonable attorney's fees to a prevailing complainant. We do not agree that *Yanta* supports that proposition.

In *Yanta*, the plaintiff was discharged from her employment. She initially filed a complaint with DILHR, alleging a violation of the Fair Employment Act. DILHR found the discharge to be an act of sex discrimination and awarded prospective relief only, ordering the defendant to reinstate the plaintiff and to cease and desist from further discrimination. The plaintiff subsequently commenced a civil action in circuit court, alleging that

her discharge was discriminatory, and seeking damages that included back pay and attorney's fees.[3] On appeal, the plaintiff argued that the provisions of the Fair Employment Act created a private civil cause of action to recover for injuries arising out of employment discrimination. The primary issue therefore was whether the plaintiff's complaint stated a cause of action.

We held that the plaintiff's complaint stated a cause of action insofar as it sought damages for lost wages while the plaintiff was unemployed. We also held that the plaintiff's right to damages was limited to the right to seek recovery for lost wages, rather than for emotional harm, harm to reputation, or attorney's fees, stating: "The statutes [the Fair Employment Act] expressly refer to harm from loss of wages; they do not refer to emotional or reputation harm or attorney's fees." 66 Wis. 2d at 62–63.

The concern in *Yanta,* therefore, was with the narrow issue of whether the plaintiff could maintain a private civil cause of action in court under the Fair Employment Act. In deciding this issue, we looked to the express language of the Act to establish the parameters of that cause of action, including the type of damages that would be allowable in a private civil action brought in court. *Yanta* did not involve an action brought directly under the Act in the administrative agency statutorily authorized to hear that action. Thus, in *Yanta,* we did not reach the issue presented in this case of whether that agency has the power to award attorney's fees to a pre-

---

[3] At the time DILHR issued its order granting prospective relief, that agency was not authorized under the Fair Employment Act to award back pay to a prevailing complainant. As we noted in *Yanta,* the Act was subsequently amended by ch. 268, Laws of 1973, to create sec. 111.36(3)(b), Stats., which specifically authorized DILHR to award back pay. This amendment was effective June 16, 1974.

vailing complainant under the language of sec. 111.36 (3) (b), Stats. 1975, which specifically authorizes DILHR to "order such action . . . as will effectuate the purpose of this subchapter. . . ."

We now turn to the language of the statute itself. Section 111.36 (3) (b), Stats., does not expressly authorize DILHR to award attorney's fees to a prevailing complainant. However, we have recognized that an administrative agency's powers include not only those that are expressly conferred by the statute under which the agency operates, but also those that are fairly implied. *See State (Dept. of Admin.) v. ILHR Dept.*, 77 Wis. 2d 126, 136, 252 N.W. 2d 353 (1977). We must therefore determine whether the authority to award attorney's fees may be fairly implied from sec. 111.36 (3) (b). That determination involves an interpretation of sec. 111.36 (3) (b), which is a question of law. Although on review we will give weight to the interpretation of a statute by the agency charged with its application, we are not bound by that interpretation. *See Nottelson v. ILHR Department*, 94 Wis. 2d 106, 115–17, 287 N.W.2d 763 (1980). We have the power to determine independently whether the standard or policy choice used by the agency comports with the statutory purpose. *Milwaukee Transformer Co. v. Industrial Comm.*, 22 Wis. 2d 502, 511, 126 N.W.2d 6 (1964).

In construing a statute, the objective is to discern the intent of the legislature. *Green Bay Packaging, Inc. v. ILHR Dept.*, 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976). A cardinal rule in interpreting statutes is to favor a construction that will fulfill the purpose of the statute over a construction that defeats the manifest object of the act. *Student Asso., U. of Wis.-Milw. v. Baum*, 74 Wis. 2d 283, 294–95, 246 N.W.2d 622 (1976).

Under sec. 111.31 (3), Stats. 1975, the provisions of the Fair Employment Act must be liberally construed to accomplish the purpose of the Act. Although sec. 111.31 (3), was subsequently amended, the stated requirement that the Act be liberally construed to accomplish the purpose of the Act has not been changed. The basic purpose of the Act is found in the declaration of policy set forth in sec. 111.31. That provision is set out in full below.[4]

---

[4] "SUBCHAPTER II

"FAIR EMPLOYMENT

"111.31 **Declaration of policy.** (1) The practice of denying employment and other opportunities to, and discriminating against, properly qualified persons by reason of their age, race, creed, color, handicap, sex, national origin or ancestry, is likely to foment domestic strife and unrest, and substantially and adversely affect the general welfare of a state by depriving it of the fullest utilization of its capacities for production. The denial by some employers, licensing agencies and labor unions of employment opportunities to such persons solely because of their age, race, creed, color, handicap, sex, national origin or ancestry, and discrimination against them in employment, tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living, thereby committing grave injury to them.

"(2) It is believed by many students of the problem that protection by law of the rights of all people to obtain gainful employment, and other privileges free from discrimination because of age, race, creed, color, handicap, sex, national origin or ancestry, would remove certain recognized sources of strife and unrest, and encourage the full utilization of the productive resources of the state to the benefit of the state, the family and to all the people of the state.

"(3) In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. *This subchapter shall be liberally construed for the accomplishment of this purpose.*" (Emphasis supplied.)

Although sec. 111.31, Stats. 1975, subsequently was amended, the basic content remained unchanged.

The Wisconsin Fair Employment Act is not difficult to comprehend. Its message is clear: in Wisconsin, discriminatory employment practices against properly qualified individuals are forbidden. The legislature has declared this to be a right of all the people. The legislature has further mandated that the Act must be liberally construed to accomplish its purposes.

We have previously identified two purposes of the Fair Employment Act: 1) to make the individual victims of discrimination "whole"; and 2) to discourage discriminatory practices in the employment area. *Anderson v. Labor & Industry Rev. Comm.*, 111 Wis. 2d 245, 259, 330 N.W.2d 594 (1983). In *Anderson*, we specifically recognized that an individual who has been the victim of discriminatory treatment and who prevails in an action brought pursuant to the Fair Employment Act should be "made whole". We held that although the Fair Employment Act does not expressly provide for prejudgment interest on back pay awards, prejudgment interest must be included in such awards because its inclusion is necessary to carry out the purposes of the Act, e.g., to make the prevailing complainant "whole".

When the language of sec. 111.36(3)(b), Stats. 1975, is construed in light of the purposes of the Fair Employment Act and the legislative mandate that the provisions of the Act be liberally construed, we conclude that DILHR's authority to award reasonable attorney's fees to a prevailing complainant may be fairly implied from that provision. Under sec. 111.36(3)(b), once the department finds that a respondent has engaged in discrimination, it is specifically authorized to ". . . order such action by the respondent as will effectuate the purpose of this subchapter [the Fair Employment Act]. . . ." This language evinces a legislative intent that DILHR have the authority to fashion an appropriate remedy for

a victim of discrimination that comports with the purposes of the Act.

Here, Gloria Watkins, despite being the prevailing party, has not been "made whole." At oral argument, LIRC conceded that point. She incurred substantial attorney's fees which, if unreimbursed, would place her in a significantly worse economic position than when she began her suit. It would be contrary to the purposes of the Act if the person whose rights have been vindicated ends up in an economically worse position than when he or she started. In order to make Gloria Watkins "whole", she must be able to recover reasonable attorney's fees.

Further, an award of reasonable attorney's fees to a prevailing complainant is justified to promote the second purpose of the Act: to discourage discriminatory practices in employment. We have previously recognized that an individual who brings an action to enforce a statutory right may be acting as a "private attorney general" to enforce the public's rights under the statute. *See Shands v. Castrovinci*, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983). Similarly, a complainant who files a complaint under the Fair Employment Act is acting as a "private attorney general" to enforce the rights of the public and to implement a public policy that the legislature considered to be of major importance. The aggregate effect of such individual actions enforces the public's right to be free from discriminatory practices in employment, which in turn effectuate the legislative purpose of outlawing such practices. Without an award of reasonable attorney's fees, few victims of discrimination would be in an economic position to advance both their individual interest and the public's interest in eliminating discriminatory employment practices.

We also note that placing the costs of vindicating the rights of a victim of discrimination on the party responsible for denying those rights, rather than on the

person discriminated against, does more than simply advance the interests of justice. It effectuates the legislative purpose of proscribing employment discrimination because it will deter employers from engaging in conduct prohibited under the Act.

Finally, it is evident that the authority to award reasonable attorney's fees to a prevailing complainant is necessary in order to fully enforce and give meaning to the rights created by the Act. The legislature could not have intended the Act to be a meaningless, empty gesture. However, a right without the means to enforce it is meaningless. If rights are to be meaningful, they must be enforceable. To enforce the rights guaranteed under the Act, assistance of counsel is fundamental. One of the more invidious aspects of discrimination is that its targets are frequently the economically weak, who are often unable to afford the assistance of counsel. Without the assistance of counsel, the ability to vindicate one's rights under the Act is so impaired that it renders the existence of those rights nearly meaningless. Where, as here, the relief sought includes no back pay from which a complainant could pay attorney's fees, even a complainant with some economic means who faces the prospect of substantial attorney's fees may well be deterred from enforcing those rights guaranteed under the Act. The legislature clearly could not have intended that result in either situation.

We therefore hold that under sec. 111.36(3)(b), Stats. 1975, DILHR has the authority to award reasonable attorney's fees to a complainant who prevails in an action brought pursuant to the Fair Employment Act.

Because LIRC concluded that DILHR was not authorized under the Fair Employment Act to award reasonable attorney's fees to Watkins, it did not determine what amount would constitute reasonable attorney's fees

in this case. We therefore reverse the order of the circuit court and remand to DILHR with directions to determine a reasonable attorney's fee award for Watkins, including reasonable attorney's fees for this appeal.

*By the Court.*—The order of the circuit court is reversed and cause remanded to DILHR for further proceedings consistent with this opinion.

STEINMETZ, J. (dissenting). To coin a phrase, "hard cases make bad law." It is obvious that this is a hard case; the plaintiff, Gloria A. Watkins, has fought the good legal fight for nearly ten years before administrative agencies and in courts, including a previous appeal to this court. In pursuing and accomplishing this favorable legal result, she incurred a bill from her attorney in the amount of $2,658.36. Because there was no pay differential between Watkin's previous position and the service zone position she sought, she received no monetary award. What she essentially received was a decision confirming that she had been a victim of unlawful racial discrimination and an order directing her employer not to repeat such action. The majority states this result and then legislates in order to compensate Watkins for her attorney fees.

If legislation has not been adopted to cure all wrongs in an area of employment and human behavior, then the appeal should be to the legislature, not to this court. It must be assumed that the legislature knew that it could grant attorney fees with a favorable award, but chose not to do so. Sec. 111.36(3)(b), Stats. (1975), makes no mention of awarding attorney fees. The broad language relied on by the majority in its analysis is "make written findings and order such action . . . as will effectuate the purpose of this subchapter." To say as the majority opinion does that the award of attorney fees is appropriate as an "action" to effectuate the purpose of

the subchapter is not an interpretation of the statute, but rather is a rewriting of it to accomplish a desired purpose. With the result-oriented technique employed in this case, any potential is possible.

*Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 330 N.W.2d 594 (1983), which is relied on in great part by the majority, was based on prior Wisconsin and federal decisions; however, no such foundation exists in this case since it deals with the award of attorney fees.

In *Anderson,* the court found the award of prejudgment interest by the commission permissible even though not directly stated in sec. 111.31(3), Stats. The federal district court cases cited at 259 of *Anderson* reasoned that although Title VII of the federal Civil Rights Act did not expressly provide for interest on back awards, the liberal interpretation of that act which was intended to make whole the person discriminated against allowed the result. Further, in *Anderson* at 260, we relied on Wisconsin cases for the award of prejudgment interest on liquidated damages as long as they were capable of determination by application of some fixed standard. Back pay awards were capable of determination by application of a fixed standard and we reasoned therefore that prejudgment interest was permissible even though not mentioned specifically in sec. 111.36(3)(b).

Now, however, the majority lifts itself up by its own bootstraps by relying on the *Anderson* case in an area where the federal case law is sparse, fuzzy and not on point as to the award of attorney fees and in an area where there are no prior Wisconsin cases on point.

This court has previously considered the award of attorney fees. In *Cedarburg L. & W. Comm. v. Glens Falls Ins. Co.,* 42 Wis. 2d 120, 124–25, 166 N.W.2d 165 (1969), we held:

"As a general rule, in the absence of any contractual or statutory liability therefor, attorney's fees and expenses incurred by the plaintiff in litigation of his claim against the defendant, aside from statutory court costs and fees, are not recoverable as an item of damages."

In the present case we have neither a contractual nor statutory liability exception. *Cedarburg* also pointed out that: "An examination of authorities reflects that several states have statutory provisions which resolve this question [of attorney fees]. This state does not." *Id.* at 124.

It is true that in *Yanta v. Montgomery Ward & Co., Inc.,* 66 Wis. 2d 53, 224 N.W.2d 389 (1974) the primary issues were whether the Fair Employment Act created a civil cause of action and whether plaintiff's complaint stated a cause of action. However, in holding that the plaintiff's complaint did state a cause of action in seeking damages for lost wages while plaintiff was unemployed, we also stated: "We limit plaintiff's right to damages to the right to seek recovery for lost wages rather than for emotional harm, harm to reputation, *or attorney's fees.*" Id. at 62. (Emphasis added.) The statute has not been relevantly altered since 1974 when the *Yanta* case was decided.

In 1977 in the case of *State (Dept. of Admin.) v. ILHR Dept.,* 77 Wis. 2d 126, 252 N.W.2d 353 (1977), we stated a principle of law which this court should not allow to be weakened in order to arrive at a desired result. We held at 136:

"It is a general rule that an administrative agency has only those powers which are expressly conferred or which are fairly implied from the four corners of the statute under which it operates. *Racine Fire & Police Comm. v. Stanfield,* 70 Wis. 2d 395, 399, 234 N.W.2d 307 (1975); *Wisconsin Environmental Decade, Inc. v. Public Service Commission,* 69 Wis. 2d 1, 16, 230 N.W.2d 243 (1975). Therefore, no agency may issue a rule that is not expressly or impliedly authorized by the legislature.

*Kachian v. Optometry Examining Board,* 44 Wis. 2d 1, 8, 170 N.W.2d 743 (1969). . . . This court has recognized the rule that any reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority. *State ex rel. Farrell v. Schubert,* 52 Wis. 2d 351, 358, 190 N.W. 2d 529 (1971). We are satisfied that such doubt exists in this situation, and therefore this power is not so implied."

Not even a liberal interpretation of sec. 111.36(3)(b), Stats. (1975) allows for the majority's holding, which is not judicially but legislatively conceived. The majority holds: "Finally, it is evident that the authority to award reasonable attorney's fees to a prevailing complainant is necessary in order to fully enforce and give meaning to the rights created by the Act." (*Supra* at 765.) Evidently, the legislature which adopted sec. 111.36(3)(b), did not agree with the majority since it could easily and clearly have provided for the commission to award reasonable attorney fees to the prevailing complainant. The legislature did not and we should not in the absence of clear authority being granted to the commission.

In *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 350, 305 N.W.2d 62 (1981), the court pointed out the same language of the statute to liberally construe the subchapter for the accomplishment of the purpose of an employer accommodating religious practices and then held: " 'We cannot, of course, by a liberal construction change the wording of a statute to mean something which was not intended by the legislature or by the plain language used.' " (Quoting *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969).)

I would affirm the circuit court.